

# OFFICE OF THE ATTORNEY GENERAL OF TEXAS
## AUSTIN

GERALD C. MANN
ATTORNEY GENERAL

Honorable Fred Erisman
Criminal District Attorney
Gregg County
Longview, Texas

Dear Mr. Erisman:

Opinion No. O-1500
Re: Whether the Commissioners' Court
is empowered to arbitrarily refuse
an application for assistance
where there has been a full com-
pliance with the requirements set
forth in Article 6228, Revised
Civil Statutes. What persons
come within the meaning of the
term "pauper" as used in Article
2351, Revised Civil Statutes?

Your letter of September 23 requesting an opinion
from this department, wherein you have given us an able brief
covering the above questions submitted, has been duly consider-
ed and received the attention of this department. Your ques-
tions propounded are briefly as follows:

"1. Under the provisions of Article 6228 of
the Revised Civil Statutes, is the Com-
missioners' Court empowered to arbitrarily
refuse an application for assistance where
there has been a full compliance with the
requirements set forth in said article?

"2. What persons come within the meaning of
the term "pauper" as used in Article 2351
of the Revised Civil Statutes?"

The material portions of Article 6228, Revised Civil
Statutes, 1925, as amended by the Acts of 1931, 42nd Leg.,
Chap. 256, provides:

Honorable Fred Erisman, Page 2

"Any widow who is the mother of a child or
children under sixteen years of age, and who is
unable to support them and maintain her home, may
present to the Commissioners' Court of the county
wherein she has resided for the preceding two
years a sworn petition for aid showing:

"First: - Her name, time and place of her
marriage, date of the death of her husband, or
date of his confinement in the penitentiary or
in an insane asylum, or date of his abandonment
of her; names, sex, and the dates and places of
their birth.

"Second: -Her length of residence in the
State, her present residence, and her residence
during each of the previous five years.

"Third: -All the property belonging to her
and to each of her children, including any future
or contingent interest she or any of them may
have.

"Fourth: -The efforts made by her to sup-
port her children.

"Fifth: -The name, relationship, and address
of each of her husbands relatives that may be
known.

"By 'widow', as used herein, means a mother
who is widowed by death or divorce, or whose hus-
band has abandoned her for more than two preced-
ing years, or whose husband is confined in the
penitentiary or in a State Hospital for the insane.

"A copy of said petition and a notice of the
time and place it will be presented to said Court
shall be served on or mailed to the County Judge
of said county at least five days before the time
the court shall be requested in said petition to
hear the same. When service is complete said
Court shall examine under oath those who desire to
be heard, and may subpoena witnesses; or the Court
or the Court may refer said matter to a Commissioner
to be appointed by it to hear said witnesses. Such

Commissioner shall make a report to the Court
stating the facts as proven before him. It
the Court concludes that unless relief is
granted the widow will be unable to properly
support and educate her children, and that they
may become a public charge, it may make an or-
der directing a monthly payment to her, out of
the County Funds, for the support of such chil-
dren, not more than Fifteen ($15.00) Dollars for
one child, and Six ($6.00) Dollars additional
for each other child. Such allowance shall be
discontinued as to any such child who reaches
the age of sixteen. The Court shall have the
right to refuse any such petition, and its ac-
tion in so doing shall be final. The Court
shall see that any widow receiving such aid is
properly caring for her children. When it is
found that she is not properly caring for her
children, or that she is an improper guardian
for them, or when the Court finds that she no
longer needs such aid, it shall thereupon re-
voke at any time with or without notice any or-
der made pursuant to this Article."

It is said in 21 R.C.L., p. 701, that:

"Care of the state for its dependent class-
es is considered by all enlightened people as a
measure of its civilization, and the care of the
poor is generally recognized as among the un-
questioned objects of public duty, but in spite
of this, the duty under the common law was pure-
ly moral and not legal. There is, therefore, no
legal obligation at common law on any of the in-
strumentalities of government to furnish relief
to paupers. The obligation to support such per-
sons results only from statute . . ."

Our Legislature has, by statute, made it the duty
of the Commissioners' Court to provide for the support of
paupers or look after the welfare of the poor and indigent
of the county. (Article 2351, Revised Civil Statutes). Such
power and duty, however, is not to be confused with the oper-
ation of the statutes in question.

Article 6228, supra, being a special law, was intended apparently as but a step toward advanced social reform, following in the wake of many of the states that have enacted what is known as "Mothers'" Pension Act, yet this statute is materially different, and it is to be presumed that the Legislature intended such statute to fit in and blend with our constitutional and systematic form of government.

The sole question confronting us in examining the foregoing statute is whether or not the intent of the Legislature is expressed in plain and unambiguous language, and whether or not said statute is a permissive one rather than mandatory on the part of the Commissioners' Court.

"In construing statutes, courts look at the language of the whole act, and if they find, in any particular clause, an expression not so large and extensive in its import as those used in other parts of the statute, if, upon a view of the whole act they can collect from the more large and extensive expressions used in the other parts, the real intention of the Legislature, it is their duty to give effect to the larger expressions." Sutherland on Statutory Construction, Sec. 245, p. 324.

Sutherland on Statutory Construction, Section 460, p. 594, further states that the rule that "may" is to be interpreted as "shall" or "must" is not by any means uniform; its application depends upon what appears to be the true intent of the statute. See also, Sedgewick on Constitutional and Statutory Law; Rains vs. Herring, 68 Tex. 468, 5 S.W. 369.

Examining the larger expressions included in the language used in the last paragraph of said statute, it will be seen that the Legislature has delegated to the Commissioners' Court the power to conclude upon what conditions and under what circumstances relief may be granted and that this court is to determine whether or not the widow will be unable to properly support and educate her children and the further fact as to whether they may become a public charge. The court is further given the right to refuse any such petition, and its action in so doing is by the provisions of the Act made final.

That the Legislature so construed said act to be permissive and not mandatory is disclosed in Section 2 of the 1931 amendment, containing the emergency clause which reads as follows:

"The fact that the present law as to mothers' aid requires a residence of five years before hungry children can be fed or furnished clothing or opportunity for education by aid from the county, while no other State requires such long residence; that the Statute is not mandatory, but that this amendment will afford an opportunity to give aid when needed, and will enlarge the needy class of children to whom aid can legally be given, and will give to some widowed mothers the great privilege of rearing their children in their own homes, creates an emergency, and an imperative public necessity that the Constitutional Rule requiring bills to be read on three several days be suspended, and said Rule is hereby suspended, and that this Act take effect from and after its passage, and it is so enacted."

It is, therefore, the opinion of this department that the Commissioners' Court, under the provisions of Article 6228, Vernons' Revised Civil Statutes, is granted full and complete authority to pass upon such applications as duly presented thereunder, and such statute being a permissive one, the court's action thereunder is not subject to review.

As to your second question, the term "pauper" is too broad and comprehensive as would permit an opinion from this department laying down any specific formula for determining what persons are or may be included within its meaning. For a general rule covering same, however, we refer you to 21 Ruling Case Law. § 5, pp. 704-5:

"The words 'pauper' and 'indigent' convey the meaning that the person has neither money nor estate, is without credit, and is unable to maintain himself because of inability to work or to obtain employment, and a person who has property immediately available for his support is not a pauper, and is properly refused public aid as such. But a person may be a pauper though he has property of his own, if it is not available for his immediate relief, or is manifestly disproportionate

to his needs, Though a person may be poor and without property, still if he has credit, and by his own promise to pay, or request, can have his condition relieved, he is not a person entitled to relief under the poor laws. The question as to the sufficiency of a man's property or credit to take him from the pauper class is for the jury."

Trusting the above answers your request, we are

Yours very truly

ATTORNEY GENERAL OF TEXAS

By

Wm. J. R. King
Assistant

WJRK:0

APPROVED NOV 7, 1939

(s) Gerald C. Mann

ATTORNEY GENERAL OF TEXAS

APPROVED
opinion committee
By  BWB
chairman